IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| HAWAI'I LEGAL SHORT-TERM RENTAL ALLIANCE, a Hawai'i non-profit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CITY AND COUNTY OF HONOLULU, a municipal corporation; DEPARTMENT OF PLANNING AND PERMITTTING OF THE CITY AND COUNTY OF HONOLULU ("DPP"); DAWN APUNA, in her official capacity as Acting Director of the DPP,[1] *et al.*,<br><br>Defendants. | Case No. 22-cv-247-DKW-RT<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

Residential property owners on O'ahu have long been able to lawfully rent their properties to tenants for a minimum of 30 days. That much is undisputed. Honolulu's Ordinance 22-7 (the "Ordinance" or "22-7")—currently set to take effect on October 23, 2022—would increase that minimum permissible rental

---

[1] Defendant Dawn Apuna, in her official capacity as Acting Director of the DPP, is substituted in place of Defendant Dean Uchida, by operation of Fed.R.Civ.P. 25(d). The latter resigned as DPP Director, and the former was appointed as his replacement, in early September 2022, after the onset of this litigation.

period from 30 to 90 days, with no provision, beyond a six-month phase out period, to accommodate those owners with existing 30–89-day tenancies.

The State statute that authorizes the City to enact zoning ordinances such as 22-7 plainly bars this. *See* HRS § 46-4(a) ("[No] ordinance enacted pursuant to this section shall prohibit the continued lawful use of any building or premises for any . . . purpose for which the building or premises is used at the time . . . the ordinance takes effect . . . ."). Further, constitutional takings principles protect a person's right to continue a vested land use despite a subsequent governmental regulation restricting that use.

Accordingly, Plaintiff Hawaiʻi Legal Short-Term Rental Alliance, on behalf of itself and its members,[2] seeks to enjoin the implementation and enforcement of Ordinance 22-7.[3] Motion for Preliminary Injunction ("MPI"), Dkt. No. 13. Finding that Plaintiff has established the elements for the requested injunction, the Court GRANTS the MPI, as more fully explained below.

---

[2]Plaintiff is a not-for-profit 501(c)(4) organization established in 2020 for the purposes of creating a sustainable business environment for legal property rentals in Hawaiʻi and lobbying and educating government officials, property owners, vendors, and the general public about the legal rental industry on Oʻahu and across the State of Hawaiʻi. Dkt. No. 13-2 ¶ 3; Complaint ¶ 9, Dkt. No. 1. Its members consist of property managers and owners who engage in rentals of residential dwelling and/or lodging units for periods of 30–89 days. *Id.*
[3]The DPP is the agency charged with developing and enforcing zoning regulations on Oʻahu. *Id.* ¶ 16.

## LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

## RELEVANT FACTUAL BACKGROUND

### I. 1957–1980: The City receives zoning authority from the State and begins enacting zoning ordinances.

The City derives its authority to enact zoning ordinances from the Zoning Enabling Act, HRS § 46-4(a), passed in 1957.  This statute provides, in relevant part:

> Zoning in all counties shall be accomplished within the framework of a long-range, comprehensive general plan prepared . . . to guide the overall future development of the county.  Zoning shall be one of the tools available to the county to put the general plan into effect in an orderly manner. . . .   The zoning power granted herein shall be exercised by ordinance which may relate to:
>
> (1) The areas within which agriculture, forestry, industry, trade, and business may be conducted;
>
> (2) The areas in which residential uses may be regulated or prohibited; . . .
>
> (12) Other regulations the boards or city council find necessary and proper to permit and encourage the orderly development of land resources within their jurisdictions. . . .

The powers granted herein shall be liberally construed in favor of the county exercising them, and in such a manner as to promote the orderly development of each county or city and county . . . to ensure the greatest benefit for the State as a whole. . . .

Neither this section **nor any ordinance enacted pursuant to this section shall prohibit the continued lawful use of any building or premises for any** trade, industrial, residential, agricultural, or other **purpose for which the building or premises is used at the time** this section or **the ordinance takes effect**; **provided that a zoning ordinance may provide for** elimination of nonconforming uses as the uses are discontinued, or for **the amortization or phasing out of nonconforming uses** or signs over a reasonable period of time **in commercial, industrial, resort, and apartment zoned areas only. In no event shall such amortization or phasing out of nonconforming uses apply to any existing building or premises used for residential** (single-family or duplex) or agricultural **uses**.

HRS § 46-4(a) (emphasis added).[4]

On January 2, 1969, pursuant to HRS § 46-4, the City divided Oʻahu into several zoning districts—among them apartment, agricultural, business, industrial, preservation, residential, and resort—with the adoption of its first Comprehensive Zoning Code ("CZC"). *See* Defendants' Opposition ("Opp.") Exh. B, Dkt. No. 24-4. The CZC was designed to:

implement the purpose and intent of the General Plan of the City by encouraging the most desirable use of land for residential, recreational, agricultural, commercial, industrial, and other purposes,

---

[4]"Nonconforming use" is a term commonly used in the zoning context. *See, e.g., League to Save Lake Tahoe v. Crystal Enters.*, 685 F.2d 1142, 1145 (9th Cir. 1982) (defining the term as "a lawful use in existence on the effective date of [a] zoning restriction and continuing thereafter in nonconformance to the [new] ordinance"); Honolulu Land Use Ordinance § 3.120 (similarly defining the term as "[a]ny use of a structure or a zoning lot which was previously lawful but which does not conform to the applicable use regulations of the district in which it is located, either on the effective date of this Chapter or as a result of any subsequent amendment").

and the most desirable density of population in the several parts of the City, and by encouraging the most appropriate use and occupancy of buildings, and by promoting good civic design and arrangement. . . .

*Id.* § 21-102.[5]

## II.   1980–2022: The City outlaws home rentals of less than 30 days in non-Resort zoning districts.

In 1980, the State legislature passed HRS § 514E, directing the counties to "amend[] their zoning ordinances [to] limit the location of . . . transient vacation rentals, within such areas as are deemed appropriate," in order to protect the lifestyles of Hawaiʻi's permanent residents.  HRS § 514E-4; *Reefshare, Ltd. v. Nagata*, 762 P.2d 169, 174 (1988) (quoting Conf. Comm. Rep. No. 8-80 at 942 in 1980 Senate Journal) (HRS § 514E legislative history providing that "transient vacation rentals should not be permitted where the lifestyles of the permanent residents will be disrupted in an unreasonable manner").  HRS § 514E-1 defined

---

[5]"The General Plan [("GP")] is a document setting forth the City's broad policies for the long range development of the city," as commanded by HRS § 46-4(a).  *See Lum Yip Kee, Ltd. v. Honolulu*, 767 P.2d 815, 817–18 (Haw. 1989).  The GP's goals are accomplished via the more detailed "regional development plans," which are, in turn, implemented by zoning ordinances.  *Id.*  The overarching goal of the City's current GP is to help the people of Oʻahu "live and work in harmony."  Opp. Exh. A at 21, Dkt. No. 24-3.  More specifically, the GP's zoning objectives and policies include: (i) "[t]o maintain the viability of Oʻahu's resort industry" by "[p]rovid[ing] for the orderly growth of the resort industry by designating appropriate areas of the Island for resort use . . . ," *id.* at 26; (ii) "[t]o provide decent housing for all the people of Oʻahu at prices they can afford" by "[e]ncourag[ing] the private sector to build homes for low- and moderate-income residents" and "[e]ncourag[ing] innovative residential development which will result in lower costs, added convenience and privacy, and the more efficient use of streets and utilities," *id.* at 36; and (iii) "[t]o reduce speculation in land and housing."  *Id.* at 37.

"transient vacation rental" as a "rental in a multi-unit building to visitors . . . with the duration of occupancy less than thirty days for the transient occupant."

In response to HRS § 514E, the City adopted a series of land use ordinances ("LUO") in 1980, 1986, and 1989 that limited home rentals of less than 30 days to Resort zoning districts and certain Apartment zoning districts located in close proximity to a Resort district.[6]  *See, e.g.*, Opp. Exh. C ("Ord. 80-106") at 3, Dkt. No. 24-5; MPI Exh. 2 ("Ord. 86-96"), Dkt. No. 13-5.  Alongside these LUOs, the City implemented a program under which property owners who had previously been renting out their homes for less than 30 days could be grandfathered in and allowed to continue doing so if they obtained a nonconforming use certificate ("NCUC").[7]  *See* MPI at 6; LUO § 21-4.110.1–2 (describing the NCUC process).

Because the 1980s LUOs only restricted home rentals of less than 30 days, it has since been legal in any Honolulu zoning district to rent homes for periods of 30 days or longer.  The City has repeatedly acknowledged such legality.  For example, in 2016, in *Kokua Coal. v. Dep't of Planning & Permitting*, Civil No. 1:16-cv-00387-DKW-RLP ("*Kokua I*"), the City signed an agreement providing, in part:

> 8. As currently worded, the [LUO] prohibits providing all or a portion of a residential dwelling unit to a transient occupant for less than

---

[6]The ordinances applied to all dwelling and lodging units, with "dwelling unit" defined as a "room or rooms connected together, constituting an independent housekeeping unit for a family, and containing a single kitchen," and "lodging unit" defined the same way, except with no kitchen.  Ord. 80-106 at 2.  This Order refers to dwelling and lodging units as "homes."
[7]Today, there remain approximately 800 non-Resort district homes authorized to rent for less-than 30 days pursuant to the 1980s-NCUCs.  Complaint ¶ 27; Answer ¶ 11; MPI at 6.

thirty consecutive calendar days for compensation. **Thus, the LUO allows a property owner to rent its property to transient guests in blocks of thirty days or more**, up to twelve times per year.

*Kokua I* Stipulation & Order, MPI Exh. 4 at 4, Dkt. No. 13-7 (emphasis added).

Similarly, in 2019, in *Kokua Coal. v. Dep't of Planning & Permitting*, Civil No. 19-00414-DKW-RT ("*Kokua II*"), the City signed another agreement that distinguished between "illegal short-term rentals," which it defined as home rentals of less than 30 days, and "legal long-term rentals," which it defined as "rental[s] of at least 30 consecutive days." *Kokua II* Stipulation & Order, MPI Exh. 6 at 4–5, Dkt. No. 13-9. The *Kokua II* agreement also "affirmed and incorporated" the *Kokua I* agreement. *Id.* at 5.

### III.   2022: The City adopts Ordinance 22-7, which outlaws home rentals of less than 90 days in non-Resort zoning districts.

On October 19, 2021, Bill 41 was introduced before the Honolulu City Council and Honolulu Planning Commission.[8] After public hearings and testimony, Bill 41 was passed on April 13, 2022 and signed into law on April 26, 2022 as Ordinance 22-7. Ordinance 22-7's findings and purpose are as follows:

> Short-term rentals are disruptive to the character and fabric of our residential neighborhoods; they are inconsistent with the land uses that are intended for our residential zoned areas and increase the price of housing for Oʻahu's resident population by removing housing stock from the for-sale and long-term rental markets. The City Council finds that any economic benefits of opening up our residential areas to

---

[8] *Bill041(21), CD2, Ordinance 22-7*, HONOLULU CITY COUNCIL, HONOLULU RECORDS COLLECTION, https://hnldoc.ehawaii.gov/hnldoc/measure/2007 (last visited October 13, 2022).

tourism are far outweighed by the negative impacts to our
neighborhoods and local residents. . . .

The purpose of this ordinance is to better protect the City's residential
neighborhoods and housing stock from the negative impacts of short-
term rentals by providing a more comprehensive approach to the
regulation of transient accommodations within the City.

MPI Exh. 1 ("Ord. 22-7") at 1, Dkt. No. 13-4.

To this effect and as relevant here, Ordinance 22-7 provides that it is no

longer lawful to rent a non-Resort district home to tenants for less than 90 days.

Ord. 22-7 at 37 (re-defining "transient vacation unit" as a home rental of less than

90 days and defining "transient occupant" as "any person who rents a lodging or

dwelling unit, or portion thereof, for less than 90 consecutive days, and whose

permanent address for legal purposes is not the lodging or dwelling unit being

rented"). The Ordinance provides an exception for any less-than-30-day rentals

operating pursuant to a 1980s-NCUC. *Id.* at 13–16.[9]  It also remains lawful to

operate a transient vacation unit in a Resort district upon complying with a new

annual registration process. *Id.* at 22–24.[10]

---

[9]Ordinance 22-7 also bars *advertisement* of a non-Resort district home when that advertisement
reflects "daily or less than three-month rental rates." Ord. 22-7 at 32–33.

[10]Among other things, the registration process requires an owner or operator to fill out an
application, submit a title report issued within 30 days of application, submit certain tax licenses,
identify all persons owning an interest in the property, and pay an initial registration fee of
$1,000. *Id.* at 22–24.

Finally, the Ordinance provides a 180-day phase-out period for owners and operators who are currently lawfully renting their non-Resort district homes for 30–89 day periods (hereinafter "prior lawful users"):

> Owners and operators of dwelling units . . . that, prior to the effective date of this ordinance, were being rented for periods of 30 consecutive days up to 89 consecutive days may continue to rent the dwelling units for such periods . . . for 180 days after the effective date of this ordinance.

*Id.* at 38.

For violations of any of its vacation rental-related provisions, Ordinance 22-7 provides that the City will impose fines of up to $10,000 per day, plus the "total sum received by the owner, operator, or proprietor of [the rental] from any impermissible rental activity during the period in which the owner, operator, or proprietor was subject to daily fines." *Id.* at 9–10. These restrictions are scheduled to take effect on October 23, 2022. MPI at 10.

## RELEVANT PROCEDURAL HISTORY

On June 6, 2022, Plaintiff filed a Complaint seeking to: (i) compel Defendants "to recognize the prior lawful use and advertisement of [prior lawful users]"; (ii) "allow those [prior lawful users] to continue to advertise and rent for periods of 30 days or more as nonconforming uses after" the effective date of October 23, 2022; (iii) compel Defendants to "provide a process for the determination and protection of" [prior lawful users]; and (iv) enjoin "the

enforcement of Ordinance 22-7 until such rights are recognized."  Complaint ¶ 8,

Dkt. No. 1.

Plaintiff asserts violations of HRS § 46-4(a) (Count 1), the state law

doctrines of vested rights and/or zoning estoppel (Count 2), substantive due

process principles under the U.S. and Hawaiʻi Constitutions (Counts 3 and 4), the

Takings Clauses of the U.S. and Hawaiʻi Constitutions (Counts 5 and 6), the

Contracts Clause of the U.S. Constitution (Count 7), and the Excessive Fines

Clauses of the U.S. and Hawaiʻi Constitutions (Count 8 and 9).[11]  Plaintiff also

requests declaratory relief.  *Id.* ¶ 107(B).

On July 7, 2022, Plaintiff filed the instant MPI, seeking to enjoin the

enforcement of Ordinance 22-7 until the City creates a process to accommodate

prior lawful users, in accordance with the alleged mandates of HRS § 46-4(a) and

---

[11]Regarding Count 7, Plaintiff alleges some of its members have existing contracts with tenants up to eighteen months into the future.  Complaint ¶ 2.  Regarding Counts 8 and 9, Plaintiff claims the Ordinance's $10,000 daily fines "will chill otherwise legal behavior," and coerce compliance, "effectively prevent[ing] meaningful judicial review."  *Id.* ¶¶ 50, 99.  Additionally, Plaintiff claims Ordinance 22-7 constitutes an illegal *de facto* ban on all advertising of non-Resort district homes, even for 90 days or more, by prohibiting advertisements that reflect "daily or less than three-month rental rates" while "[m]ajor hosting platforms and advertising sites[] generally display daily, weekly or monthly rates, which is beyond the control of the property owner or manager listing the property for rent."  *Id.* ¶ 39; Ord. 22-7 at 32–33.  A similar claim was made in *Kokua II* regarding a similar provision in the land use ordinance at issue there. There, the City stipulated that "[a]dvertising . . . a legal long-term rental . . . stating daily rates, and/or less than monthly rates" would not be unlawful, so long as the advertisement also stated "that the minimum rental period for the rental property [wa]s thirty days."  *Kokua II* Stipulation & Order at 4–5.

constitutional takings principles.  Defendants opposed the MPI on August 25, 2022, and Plaintiff replied on September 1, 2022.  Dkt. Nos. 24, 26.

During a hearing on the MPI on September 7, 2022, the Court directed the parties to meet with the assigned Magistrate Judge to evaluate the prospects of a negotiated resolution.  *See* Dkt. No. 27.  In the discussions that followed, Plaintiff reported approximately 1,000 properties on Oʻahu operating as established 30–89-day rentals, 525 to 550 of which are owned and/or managed by Plaintiff's members.  In light of the parties' representations that no negotiated resolution was feasible in advance of the Ordinance's effective date, this Order follows.

## DISCUSSION

### I.    Likelihood of Success on the Merits

#### A.    Ordinance 22-7 likely violates HRS § 46-4(a).

It is "fundamental" that Hawaiʻi counties derive their power to restrict land uses from the State Legislature.  *Save Sunset Beach v. City & County of Honolulu*, 78 P.3d 1, 15–17 (Haw. 2003) ("[C]ounties are authorized to zone only according to the dictates of HRS § 46-4 . . . .").  As such, any zoning ordinance that conflicts with HRS § 46-4(a) is invalid.  *Id.* at 16 ("[A]ny conflict between State provisions and the county zoning ordinances is resolved in favor of the State statutes, by virtue of the supremacy provisions of article VII, section 6 of the Hawaiʻi Constitution and HRS § 50-15."); *Syngenta Seeds, Inc. v. County of Kauai*, 842

F.3d 669, 674 (9th Cir. 2016) ("The Hawai'i Supreme Court has ruled that a county [zoning] ordinance . . . is invalid if it conflicts with state law . . . .").

In deciding whether Ordinance 22-7 conflicts with HRS § 46-4(a), the Court first construes the relevant provisions of the statute.  "When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is obtained primarily from the language contained in the statute itself."  *Iddings v. Mee-Lee*, 919 P.2d 263, 268 (Haw. 1996).  Thus, "[w]here the language of a statute is plain and unambiguous, [the Court's] *only duty* is to give effect to the statute's plain and obvious meaning."  *Id*. at 269 (emphasis added); *Matter of Palk*, 542 P.2d 361, 364 (Haw. 1975) ("[W]here there is no ambiguity in the language of a statute, . . . and the literal application of the language would not produce an absurd or unjust result, . . . there is no room for judicial construction and interpretation . . . .").

The language in the relevant provisions of HRS § 46-4(a) is plain and unambiguous:

> Neither this section nor any ordinance enacted pursuant to this section shall prohibit the continued lawful use of any building or premises for any . . . purpose for which the building or premises is used at the time this section or the ordinance takes effect.

A plain reading of this provision bars a county from passing a law that discontinues any previously lawful use of any property.[12]  The statute provides one clear exception:

> [A] zoning ordinance may provide for elimination of nonconforming uses as the uses are discontinued, or for the amortization or phasing out of nonconforming uses or signs over a reasonable period of time in commercial, industrial, resort, and apartment zoned areas only.  In no event shall such amortization or phasing out of nonconforming uses apply to any existing building or premises used for residential (single-family or duplex) or agricultural uses.

*Id.*  This provision plainly and unambiguously allows a county to phase out a nonconforming use "over a reasonable period of time" *in four zoning districts only*: commercial, industrial, resort, and apartment.  *Id.*  It also strictly prohibits the phase-out from "apply[ing] to *any* existing building or premises used for residential (single-family or duplex) . . . uses."  *Id.*  (emphasis added).

In this light, Ordinance 22-7 clearly violates the relevant provisions of HRS § 46-4(a).  It is currently legal to rent Oʻahu homes to tenants for 30–89 day periods in any zoning district.  The Ordinance threatens to prohibit that activity in all non-Resort districts starting on October 23, 2022 or at least following the

---

[12]Hawaiʻi appellate courts have confirmed this obvious reading of HRS § 46-4(a).  *See, e.g., Waikiki Marketplace Inv. Co. v. Chair of Zoning Bd. of Appeals of the City & County of Honolulu*, 949 P.2d 183, 193 (Haw. App. 1997) (explaining that HRS § 46-4(a) prohibits zoning changes that eliminate prior lawful uses without grandfathering in nonconforming uses); *Robert D. Ferris Trust v. Planning Comm'n of Kauai*, 378 P.3d 1023, 1028 (Haw. App. 2016) (stating that HRS § 46-4(a)'s "statutory protection of lawfully existing uses . . . 'is grounded in [state and federal] constitutional law'") (quoting *Waikiki Marketplace*, 949 P.2d at 193–94).

prescribed 180-day phase-out period, without grandfathering in prior lawful users. This is in direct conflict with H.R.S. § 46-4(a)'s bar against elimination of "lawful use[s]" that are in place "at the time . . . [an] ordinance takes effect."  Thus, unless the statute's amortization exception applies, this aspect of the Ordinance is conflict-preempted and, therefore, invalid.

HRS § 46-4(a)'s amortization exception applies "only" in "commercial, industrial, resort, and apartment zoned areas" (hereinafter "phase-out districts").  In other words, the City may not phase out a nonconforming use in *non*-phase-out districts—*e.g.*, residential or agricultural zoning districts.  To the extent the Ordinance purports to eliminate or phase out existing 30–89 day rentals in residential, agricultural, and other non-phase-out districts, it is invalid.[13]

Although the City *may* phase out a nonconforming use in phase-out districts—*e.g.*, business, industrial, or non-Resort apartment zoning districts[14]— even for those districts, the Ordinance is still invalid because HRS § 46-4(a) only allows amortization in cases where the home is not being used for residential purposes.  *See* HRS § 46-4(a) ("In no event shall such amortization or phasing out of nonconforming uses apply to any existing building or premises used for

---

[13]This addresses the likelihood of success on the statutory claim for most of the properties in this case.  *See* Ord. 22-7 at 1 (explicitly directing its provisions at "residentially zoned areas").
[14]The Ordinance allows transient vacation rentals in a Resort district and in A-1 and A2 apartment districts in close proximity to a Resort district.  Thus, non-Resort apartment zoning districts include the A-3 and Apartment Mixed Use zoning districts.

residential (single-family or duplex) or agricultural uses.").  And 30–89-day home rentals constitute "residential . . . uses."

When interpreting words in a statute, "we give words their common meaning."  *Iddings*, 919 P.2d at 269; *see also United States v. Flores*, 729 F.3d 910, 914 (9th Cir. 2013) ("[U]nless defined, words in a statute will be interpreted as taking their ordinary, contemporary, common meaning.") (internal quotation marks and citation omitted).

Here, HRS § 46-4(a) does not define "residential use."[15]  Nor have Hawaiʻi courts yet interpreted the term in the context of vacation rentals.  *See* Opp. at 15.  Thus, the Court has examined the available resources to glean the "common meaning" of the term, including relevant dictionary definitions, other states' interpretations of the term in similar contexts, and other relevant State and City statutes or ordinances.

"Residential" means "used as a residence."  Merriam-Webster.com Dictionary (last visited Oct. 8, 2022).  "Residence," in turn, means "the act or fact of dwelling in a place for some time; the act or fact of living or regularly staying at or in some place for the discharge of a duty or the enjoyment of a benefit."  *Id.* "Dwell" means "to remain for a time," and "live" means, *inter alia*, "to maintain

---

[15]The term "residential" is viewed as synonymous with "single-family or duplex" by many courts.  *See infra*, note 16 (collecting cases).

oneself; to occupy a home." *Id.*; *see also* Black's Law Dictionary (5th ed. 1979) (defining "residence" as "[l]iving or dwelling in a certain place permanently or for a considerable length of time"). The noun "use" means "a particular service or end." Merriam-Webster.com Dictionary (last visited October 8, 2022).

As these definitions show, the term "residential use" depends both upon the function the property serves for its occupant and the duration of time the property is used. The durational component is not precise, including, for instance, "for some time," "for the discharge of a duty or the enjoyment of a benefit," "for a time," and "permanently or for a considerable length of time."

Likewise, in common usage, the term depends on both function and duration, although the functional component is generally more significant. Indeed, the appellate courts of at least nineteen states have decided that even rental stays of *less than* 30 days—nightly, weekend, or weeklong stays—constitute residential uses or purposes.[16] These states focused on whether such short-term

---

[16]*See, e.g.*, *Wihbey v. Pine Orchard Ass'n Zoning Bd. of Appeals in Branford*, 2021 WL 5014096 (Conn. Superior Ct. 2021); *Wilson v. Maynard*, 961 N.W. 2d 596 (S.D. 2021); *Craig Tracts Homeowners' Ass'n, Inc. v. Brown Drake, LLC*, 477 P.3d 283 (Mont. 2020); *Forshee v. Neuschwander*, 914 N.W. 2d 643 (Wis. 2018); *Tarr v. Timberwood Park Owners Ass'n, Inc.* 556 S.W. 3d 274 (Tex. 2018); *Santa Monica Beach Prop. Owners Ass'n, Inc. v. Acord*, 219 So. 3d 111 (Fla. Ct. App. 2017); *Houston v. Wilson Mesa Ranch Homeowners Ass'n, Inc.*, 360 P.3d 255 (Colo. Ct. App. 2015); *Wilkinson v. Chiwawa Communities Ass'n*, 327 P.3d 614 (Wash. 2014) (en banc); *Estates at Desert Ridge Trails Homeowners' Ass'n v. Vazquez*, 300 P.3d 736 (N.M. Ct. App. 2013); *Russell v. Donaldson*, 731 S.E. 2d 535 (N.C. Ct. App. 2012); *In re Toor*, 59 A.3d 722 (Vt. 2012); *Slaby v. Mountain River Estates Residential Ass'n*, 100 So. 3d 569 (Ala. Civ. App. 2012); *Applegate v. Colucci*, 908 N.E. 2d 1214 (Ind. Ct. App. 2009); *Scott v. Walker*, 645 S.E. 2d 278 (Va. 2007); *Lowden v. Bosley*, 909 A.2d 261 (Md. Ct. App. 2006); *Mullin v. Silvercreek Condo., Owner's Ass'n, Inc.*, 195 S.W. 3d 484 (Mo. Ct. App. 2006); *Pinehaven*

residents were using the homes for ordinary living activities and benefits—*e.g.*, eating, washing, sleeping, storing their belongings and vehicles, and enjoying the surrounding scenery and community.  Some cases illustrated the difference between ordinary living activities and business activities by discussing alternative uses, such as bustling autobody shops, *see, e.g.*, *Craig Tracts*, 744 P.3d at 228, while others assessed how the short-term nature of the stays would tend to affect the surrounding inhabitants.  What the decisions had in common was their reliance on the use to which the home was put—*i.e.*, the functional component.  On the other hand, the Court has not found any case, nor have Defendants cited any, holding that rentals of 30 days or longer were *not* residential.  The Court is aware of five jurisdictions that focused primarily on duration, holding that short-term rentals ranging from one- to seven-nights did not constitute residential uses.[17]  But

*Planning Bd. v. Brooks*, 70 P.3d 664 (Idaho 2003); *Yogman v. Parrott*, 937 P.2d 1019 (Or. 1997) (en banc); *Catawba Orchard Beach Ass'n, Inc. v. Basinger*, 685 N.E. 2d 584 (Ohio Ct. App. 1996).  These cases determined whether less-than-30-day rentals violated provisions of restrictive covenants, zoning ordinances, condominium by-laws, or deed provisions that (i) limited the land use to residential or single-family, and/or (ii) prohibited commercial or business uses.  The analysis was essentially the same no matter the source of the land use restriction.  It should be noted that the 2006 *Lowden* court decided this issue in the context of a restrictive covenant and, in doing so, declined to extend a 1959 zoning holding in *Keseling v. City of Baltimore*, 151 A.2d 726, 729 (Ct. App. Md. 1959), relied on by Defendants, which held that a home being "used for four families and seven other individuals and a business office" violated a prohibition on business uses.  909 A.2d at 261.  The different holdings in *Lowden* and *Keseling* did not depend on the context (restrictive covenant versus zoning ordinance).  Rather, *Keseling* was limited to its particular facts and a single home, and *Lowden* declined to extend that narrow holding to short-term rentals more generally.

[17]*See, e.g., Styller v. Zoning Bd. of Appeals of Lynnfield*, 169 N.E. 3d 160, 164 n.6, 171 (Mass. 2021) (deferring to a zoning board's interpretation of its own rule in holding that very short-term rentals averaging five days were not permitted in single-residence zoning districts); *Slice of Life, LLC v. Hamilton Twp. Zoning Hearing Bd.*, 207 A.3d 886, 888 (Pa. 2019) (holding that "purely

these outliers are, in any event, inapposite because even if the Court were to similarly emphasize duration over function, the time frame at issue here is 30 days or longer.[18]

Undeterred, Defendants contend that 30–89-day rentals are not residential uses because they involve frequent occupant turnover not traditionally associated with family living.  Opp. at 15–16.  Defendants argue that these rentals are commercial uses akin to resort and hotel complexes because they involve

transient uses of property," such as short-term rentals "for a few days at a time" violated zoning restriction permitting only "single housekeeping unit[s]"); *Hensley v. Gadd*, 560 S.W. 3d 516, 520 (Ky. 2018) (describing neighbors' concerns with "occasional excessive noise, vehicles parked on the street, possible overuse of septic tank causing offensive odors and possible conduct damaging the Subdivision's golf course property" in holding that "one-night, two-night, weekend, [and] weekly" rentals violated deed restrictions); *Eager v. Peasley*, 911 N.W. 2d 470, 473 (Mich. Ct. App. 2017) (holding that rentals of two to seven nights violated restrictive covenant limiting use to "private occupancy only" and "private dwelling" and restrictive covenant barring "commercial use"); *Bostick v. Desoto Cnty.*, 225 So. 3d 20, 21 (Miss. Ct. App. 2017) (holding that "succession of short-term, transient renters" including "family gatherings, vacations, 'guys' and 'girls' weekends, a 'bachelorette gathering,' . . . [and] a place for out-of-state wedding guests to stay" involving "raucous parties, loud music, and out-of-state vehicles coming and going at the houses" violated "dwelling" and "residence" zoning provisions).
[18]The Court is also aware of two cases—including one in Hawaiʻi, on which Defendants conclusorily rely, *see* Opp. at 15–16—holding that a timeshare unit was not a residential use. *See, e.g.*, *Reefshare*, 762 P.2d at 175 ("Time sharing is a resort-type use, not a residential use."). Again, these cases are inapposite because they apply exclusively to time shares in multi-unit buildings.  For example, in *O'Connor v. Resort Custom Builders, Inc.*, 591 N.W. 2d 216, 221 (Mich. 1999), the Michigan Supreme Court held that "interval ownership" in the context of a timeshare unit owned by 48 different owners, each authorized to use the unit for one week out of the year, was not a "residential purpose" within the meaning of a restrictive covenant.  Similarly, in *Reefshare*, 762 P.2d at 175, the Hawaiʻi Supreme Court considered whether a time share developer could develop time shares within a 130-unit condominium complex, despite a non-unanimous vote by members of the condominium owners association and the HRS § 514E-6 requirement that such use may be created only upon a unanimous vote.  In deciding in the negative, the Hawaiʻi Supreme Court construed several clauses of HRS § 514E and the condominium bylaws that were applicable only to time shares, not transient vacation rentals.  *See id.* at 172–75; HRS § 514E-1 (explicitly differentiating "time share unit" from "transient vacation rental").

18

"speculative business risks" or "speculative real property investments."  Opp. at 2,

15, 22–23 ("[S]hort-term rentals are [] business, commercial, and transient/resort

type land uses; they are not 'residential uses' protected from amortization under

HRS § 46-4.").

The Court disagrees.  Whether a use is residential depends much more on

*what* is being done at a residence than *for how long*.  30–89 day rentals on Oʻahu

are used as housing by:

> (1) Oʻahu residents who have sold and bought [homes]; (2) off-island
> families traveling to Oʻahu for medical care; (3) traveling healthcare
> workers temporarily assigned to Oʻahu; (4) military families in
> transition; (5) employees performing work on Oʻahu; (6) temporarily
> displaced families; [and/]or (7) others who prefer to temporarily
> reside closer to work or schools than the resort districts.

Plaintiff's Reply Brief at 7 ("Reply"), Dkt. No. 26 (citing Declaration of Andreea

Grigore ("Grigore Decl.") ¶ 5).  Defendants do not dispute that these rentals are

being used for ordinary living activities by the occupants.  Although the occupants

of monthly rentals may shift more frequently than some neighbors and perhaps

Defendants would like, there is no doubt that these tenants are using the homes for

residential purposes.  Moreover, the use does not depend on *why* the property is

owned.  By Defendants' logic, *any* home rental of *any length* is a commercial use

if the property is owned for "speculative" financial or investment purposes.

Defendants make two additional contentions that should be addressed: first,

that it is "absurd" to "interpret[] HRS [§] 46-4[(a)] in a manner that prohibits the

City from regulating the duration [of] residential property rentals" because such an interpretation "would undermine its ability to address fundamental zoning issues and render the long-range and comprehensive planning require[ment]s in HRS § 46-4[(a)] a nullity." Opp. at 19. The Court's interpretation does not render the long-range and comprehensive planning requirement a nullity, nor does it prevent the City from regulating the duration of vacation rentals. It simply places certain restrictions on that regulation—restrictions plainly imposed by the State Legislature. The City may, and indeed must, execute its long-range planning goals, *while* respecting and accommodating prior lawful uses already in place, as HRS § 46-4(a) requires it to do.[19]

Second, Defendants argue that HRS § 514E impliedly repealed HRS § 46-4(a) as to vacation rentals. In other words, when HRS § 514E encouraged the

---

[19]In fact, the State Legislature has been lobbied by the DPP and other counties since at least 2014 to adopt House Bill 76 ("H.B. 76"), whose stated purpose is to "make explicit the counties' authority to enact ordinances to amortize or phase out . . . nonconforming or otherwise allowed short-term rentals in any zoning classification." *See* MPI Exh. 9 at 2, 8 Dkt. No. 13-12 (proposed H.B. 76); MPI Exh. 10, Dkt. No. 13-13 (DPP testimony on H.B. 76). H.B. 76 has never passed. Here, the City refuses to concede that the plain terms of HRS § 46-4(a) prohibit the amortization of previously lawful short-term rentals "in any zoning classification." *See* MPI Exh. 9 at 8; Opp. at 21–22 ("DPP's public testimony on H.B. 76 simply states that HRS § 46-4 *could* be interpreted as preventing the Counties from phasing out short-term rentals. DPP simply asked the State Legislature to make clear that Counties *can* phase out short-term rentals without violating HRS § 46-4."); *see also* MPI Exh. 10 (former Director Uchida explaining that H.B. 76 would allow DPP to "better control[] short-term rentals in particular areas if needed"). In contrast, Maui County's Planning Director *has* conceded, while lobbying in support of H.B. 76, that HRS § 46-4(a) prohibits amortization in certain zoning districts. *See* MPI Exh. 11, Dkt. No. 13-14 (Maui County Director stating that nonconforming uses "cannot currently be [amortized] without the proposed bill").

counties to "amend[] their zoning ordinances [to] limit the location of . . . transient vacation rentals, within such areas as are deemed appropriate," it gave the counties carte blanche to regulate vacation rentals without the impairment of HRS § 46-4(a)'s strictures. *See* Opp. at 19–21. This argument is meritless. HRS § 514E is not at odds with HRS § 46-4(a): the counties may easily comply with HRS § 514E's mandate to regulate transient vacation rentals while continuing to follow HRS § 46-4(a)'s mandate of protecting nonconforming uses.[20]

In sum, Plaintiff's 30–89-day rentals on O'ahu are residential land uses under HRS § 46-4(a), and the amortization exception therefore does not apply, even in phase-out districts. Ordinance 22-7 is conflict-preempted and invalid insofar as it purports to prohibit prior lawful users from continuing their 30–89-day rentals in non-Resort districts.

B.   Ordinance 22-7 likely violates constitutional takings principles.

The Takings Clause, made applicable to the States by the Fourteenth Amendment, provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V.[21]

---

[20]Moreover, HRS § 514E does not even apply to Ordinance 22-7, which is specifically directed at all residential rentals lasting longer than 30 days. *See* HRS § 514E-1 (defining transient vacation rental as a rental of "less than [30] days" in "multi-unit building[s]").

[21]Section 20 of the Hawaii Constitution goes further than its federal counterpart and provides that private property shall not be taken *or damaged* for public use without just compensation.

In the Ninth Circuit, "[w]e use a two-step analysis to determine whether a constitutional taking has occurred: first, we determine whether the subject matter is 'property' within the meaning of the Fifth Amendment and, second, we establish whether there has been a taking of that property, for which compensation is due." *Bowers v. Whitman*, 671 F.3d 905, 912 (9th Cir. 2012) (quoting *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 1002 (9th Cir. 2007), *aff'd* 553 U.S. 591 (2008)).

With regard to the first step, the U.S. Supreme Court has explained:

> Property interests are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Property rights may be constitutionally protected—such that they are safeguarded by *due process* principles—but in order to be protected by *takings* principles, those property rights must also be vested.[22] *Bowers*, 671 F.3d at 912; *see also ibid.* at 916 ("[A]n interest in a particular land use does not constitute a protected property interest, unless the interest has vested in equity based on principles of detrimental reliance.") (citing *League to Save Lake Tahoe v. Crystal Enters.*, 685 F.2d 1142, 1145 (9th Cir. 1982)); *United States v. Sioux Nation*, 448 U.S. 371, 414–15 (1980).

---

[22]The Due Process Clause of the U.S. Constitution provides, "No state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amends. V; IV § 1. Finding that Ordinance 22-7 likely violates takings principles, the Court does not determine whether it also likely violates due process principles.

Thus, here, to determine whether takings principles protect Plaintiff's right to continue operating 30–89-day rentals, the Court must determine whether that interest has vested, such that the City cannot remove or modify the right without committing a constitutional taking. *See Bowers*, 671 F.3d at 913.

"To determine whether a property interest has vested for Takings Clause purposes, 'the relevant inquiry is the certainty of one's expectation in the property interest at issue.'" *Id.* (quoting *Engquist*, 478 F.3d at 1002); *see also* Black's Law Dictionary 1324 (7th ed. 1999) (defining a vested right as "[a] right that so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent"). As the Ninth Circuit has noted, "if the property interest is 'contingent and uncertain' or the receipt of the interest is 'speculative' or 'discretionary,' then the government's modification or removal of the interest will not constitute a constitutional taking." *Id.* (quoting *Engquist*, 478 F.3d at 1003–04).

In the present case, 30–89-day rentals in non-Resort districts are a vested property right protected by takings principles. Plaintiff has articulated its vested entitlement to this property right on the basis of equitable reliance principles:

> Many owners of properties that have been lawfully used for rentals for periods of 30–89 days rely on that rental income to offset the costs of ownership and/or to finance their retirements. Many owners have made decisions to purchase and/or to finance based on their ability to rent for periods of 30–89 days. If unable to continue to rent their properties for periods of 30–89 days, many will have to sell.

*See* MPI at 3–4 (citing Grigore Decl. ¶ 4). And Plaintiff has articulated the basis of such justifiable reliance—the plain language of HRS § 46-4(a).[23] In short, there is nothing "contingent," "uncertain," "speculative," or "discretionary" in the long-standing use of private property for the rental purposes identified, nor is there anything inequitable in honoring Plaintiff's "expectation in the property interest at issue," establishing that this property right has vested.[24] *See Bowers*, 671 F.3d at 913.

The second step of the *Bowers* analysis calls for determination of "whether there has been a taking of the property." *Id.* at 912. Here, there is no question that there has, in that Ordinance 22-7 outlaws the rentals in question within 180 days and without providing any process to compensate or accommodate nonconforming uses. In this light, Ordinance 22-7 likely violates the Takings Clause.

This determination is consistent with that of the Hawaiʻi Intermediate Court of Appeals:

---

[23]Plaintiff and its members have also relied on the State and City's 1980s regulations limiting non-Resort district transient rentals to less than 30 days, the City's 1980s decision to accommodate less-than-30-day NCUCs, the City's recent *Kokua I* and *Kokua II* settlement agreements both acknowledging, in no uncertain terms, the legality of 30–89-day rentals, and the DPP's and other counties' recent lobbying of the State legislature for passage of H.B. 76.

[24]Defendants contend that 30-89-day rentals cannot be considered "vested rights" because they are "speculative business risks." Opp. at 22. Not only is the property right at issue here *not* a business land use, *see supra* (discussing residential use), but Defendants provide no authority for the premise that business uses cannot amount to vested rights. *See, e.g., Lake Tahoe*, 685 F.2d at 1145 (analyzing whether construction on a hotel project was a vested right and not considering the business nature of the construction project in deciding in the negative).

> [T]he right of a property owner to the continued existence of uses and structures which lawfully existed prior to the effective date of a zoning restriction is grounded in constitutional law.
>
> [D]ue process principles protect a property owner from having his or her vested property rights interfered with, and preexisting lawful uses of property are generally considered to be vested rights that zoning ordinances may not abrogate.

*Waikiki Marketplace Inv. Co. v. Chair of the Zoning Bd. of Appeals of City and Cnty. of Honolulu*, 949 P.2d 183, 193–94 (Haw. Ct. App. 1997) (citing U.S. Const. amend. V and Haw. Const., art. 1 § 5) (other citations omitted); *Robert D. Ferris Trust v. Planning Comm'n of the Cnty. of Kauai*, 378 P.3d 1023, 1028–29 (Haw. Ct. App. 2016) ("The statutory protection of lawfully existing uses and structures prior to the effective date of a zoning restriction is grounded in constitutional law.") (internal quotation marks omitted); *see also Lake Tahoe*, 685 F.2d at 1145 ("A provision permitting continuance of a nonconforming use is ordinarily included in zoning ordinances because of the hardship and doubtful constitutionality of compelling the immediate discontinuance of nonconforming uses.").

## II.     Irreparable Harm

Preliminary injunctions are generally disallowed when a remedy at law, *i.e.*, damages, is available.  Thus, in order to prevail on a motion for preliminary injunction, a plaintiff must show that it is likely to suffer irreparable harm in the absence of preliminary equitable relief.

To do so, a plaintiff must support its claim of irreparable harm with actual evidence of immediate threatened harm, rather than unsupported or conclusory statements.  *See Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674–75 (9th Cir. 1988).  Moreover, "economic injury alone does not support a finding of irreparable harm because such injury can be remedied by a damage award."  *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991); *see also Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("[T]emporary loss of income . . . does not usually constitute irreparable injury."). However, "[i]t is [also] well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).[25]

Here, the City posits that "[t]he injuries Plaintiff[] complain[s] of are purely economic."  Opp. at 24.[26]  But Plaintiff has shown that its members will suffer irreparable constitutional injury—alongside economic injury—if Ordinance 22-7 is

---

[25]*See also Mitchell v. Cuomo*, 748 F.2d 804, 806 (2nd Cir. 1984) ("When an alleged deprivation of a constitutional right is involved . . . no further showing of injury is necessary [to obtain a preliminary injunction]."); *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 296 (5th Cir. 2012) (similar).

[26]Defendants rely on an unpublished Ninth Circuit holding that alleged economic injury alone does not constitute irreparable harm when such injury stems from an unsupported constitutional claim arising from the impairment of a property right.  Opp. at 24; *Amwest Sur. Ins. Co. v. Reno*, 52 F.3d 332, *1 n.1 (9th Cir. 1995) (unpublished disposition); *see also Apartment Ass'n of L.A. Cnty., Inc. v. City of L.A.*, 500 F. Supp. 3d 1088, 1100–01 (C.D. Cal. 2020) (holding there was no irreparable harm when the plaintiff was unlikely to succeed on its constitutional claim).  Here, in contrast, Plaintiff has established a likelihood of success on its Takings claim.  *Melendres* thus controls.  695 F.3d at 1002.

allowed to take effect.  Plaintiff, its members, and others similarly situated, will be deprived of their constitutional right to continue their vested land use of 30–89-day rentals.  These members include (i) Oʻahu residents who live in their homes and rent out portions of the homes; (ii) Oʻahu residents who rent out second homes on their properties or elsewhere; (iii) Oʻahu residents who rent out their homes while traveling or working off-island; and (iv) others.  Complaint ¶ 4.  In some cases, these property owners have relied on their ability to operate such rentals in fashioning their retirement plans and making large financial decisions.  Grigore Decl. ¶ 4.  If they are unable to continue 30–89-day rentals, many will have to sell their homes.  *Id*.  While damages certainly are compensable, it is impossible to repair such constitutional harms retrospectively.  *See Melendres*, 695 F.3d at 1002; *Elrod*, 427 U.S. at 373.[27]

---

[27]The *collateral* damage associated with the statutory and constitutional violations brought on by Ordinance 22-7 would also be difficult to measure or remedy retrospectively.  Plaintiff, for instance, claims that 30–89-day rentals "fill a much needed accommodation market that is not served by traditional hotels or for employment that is far away from resort-zoned areas." Complaint ¶ 3.  Tenants of 30–89-day rentals include: (i) members of the U.S. military who are transitioning to or from on-base military housing; (ii) doctors and nurses providing contracted medical care at Oʻahu health care facilities, including the 500 traveling clinicians who came to Hawaiʻi during the COVID-19 pandemic; (iii) local residents transitioning between homes; (iv) contractors and their employees performing work on Oʻahu; (v) residents of military housing temporarily displaced by the Red Hill fuel leak, and/or other Oahu residents displaced by fire or flood; (vi) neighbor-island families travelling to Oahu to receive medical care or attend events; (vii) others temporarily working on or visiting Oʻahu who, out of need or preference, choose not to stay in a traditional hotel in or near a resort zone.  MPI at 4; Complaint ¶ 3; Grigore Decl. ¶ 5.  And 30–89-day rentals also create "spin-off" jobs—like property managers, yard care and pool care specialists, house cleaners, chefs, concierges, and maintenance and handymen—that will be disrupted if Ordinance 22-7 becomes effective.  MPI at 5; Grigore Decl. ¶ 6.

III.   **Balance of the Equities**

The balance of the equities tips in Plaintiff's favor.  A preliminary injunction here will merely enjoin the enforcement of Ordinance 22-7 until and unless the City establishes a process to protect nonconforming uses.  Though this requirement may cause procedural challenges, the City has met this challenge before.  *See, e.g.*, Ord. 86-96 (Honolulu County implementing NCUC program for less-than-30-day rentals); *see also* Kauai County Code § 8-17.10(a) (providing an NCUC process for previously lawful short-term vacation rentals after a 2008 zoning restriction was imposed); Hawaii County Code § 25-4-16.1 (same for a 2019 restriction).

Defendants assert that the citizens of Oʻahu rely on the "political process" and "depend on the City to protect their value preferences for family living and the quiet enjoyment of property in the residential districts," and that "[Plaintiff's] property rights have always been, and continue to be subject to reasonable restrictions imposed by the State and County governments."  *Id.* at 25–26.  Thus, the City contends that the balance of the equities favors "honoring the results of the democratic process rather than subverting it though an injunction."  *Id.* at 25.

The principles behind Defendants' statements are no doubt true.  The citizens of Oʻahu rely on the democratic and legislative processes to implement their wishes and value preferences.  But this truth undermines, rather than supports, Defendants' position.  It is the City's right to limit land uses that is subject to the

28

strictures of the State Legislature.  Not the other way around.  And it is the City's responsibility to enact zoning ordinances in accord with the clear policy choices made by democratically elected legislators on the state and federal levels.  The State Legislature has made a clear determination that protection of preexisting lawful residential uses is preeminent to the City's authority to eliminate such uses. It is no harm for the City to be compelled to comply with the constitutions and statutes that bestow and restrict its power.  The balance of the equities tips clearly in Plaintiff's favor.

## IV.   Public Interest

Finally, an injunction is in the public interest.  *See Melendres*, 695 F.3d at 1002 (holding that for purposes of preliminary injunction analysis, "it is always in the public interest to prevent the violation of a party's constitutional rights") (citation omitted).

## <u>CONCLUSION</u>

The City and County of Honolulu; the Department of Planning and Permitting; Dawn Apuna, in her official capacity as Acting Director of the Department of Planning and Permitting; and all their respective officers, agents, servants, employees, and attorneys, and persons in active concert or participation with them who receive actual notice of this Order, hereby are enjoined from enforcing or implementing Ordinance 22-7, signed into law on April 26, 2022,

insofar as it prohibits 30–89-day home rentals, or the advertisement of such rentals, in any district on Oʻahu, pending further order from this Court.

No security bond is required under Federal Rule of Civil Procedure 65(c).

The Court declines to stay this ruling or hold it in abeyance should an emergency appeal of this order be filed.

IT IS SO ORDERED.

DATED: October 13, 2022 at Honolulu, Hawaiʻi.



_____
Derrick K. Watson
United States District Judge

_Hawaii Legal Short-Term Rental Alliance vs. City and County of Honolulu, et al._;
Civil No. 22-00247 DKW-RT; **ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**