IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| HAWAII LEGAL SHORT-TERM RENTAL ALLIANCE,<br><br>          Plaintiff,<br><br>    vs.<br><br>CITY AND COUNTY OF HONOLULU, *et al.*,<br><br>          Defendants. | Case No. 22-cv-00247-DKW-RT<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND (2) DENYING AS MOOT DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** |

Plaintiff Hawaii Legal Short-Term Rental Alliance ("HILSTRA")[1] moves for summary judgment and for permanent injunctive relief in this case challenging Honolulu's Ordinance 22-7. Ordinance 22-7 increases the minimum permissible rental period for residential properties on Oʻahu from 30 days to 90 days, with no provision, beyond a six-month phase out period, to accommodate existing 30 to 89 day rentals. Dkt. No. 60. HILSTRA seeks an order: (1) finding that Ordinance 22-7 is preempted by Hawaiʻi Revised Statutes ("HRS") § 46-4(a); and (2) invalidating Ordinance 22-7, or, in the alternative, permanently enjoining Defendants City and

---

[1]HILSTRA is a nonprofit corporation with the mission of promoting a sustainable business environment for legal property rentals across the state of Hawaiʻi. Complaint at ¶ 9, Dkt. No. 1. Its members include property managers and owners who, prior to the effective date of Ordinance 22-7, participated in advertising and renting residential properties on Oʻahu for periods of at least 30 days. *Id.*

County of Honolulu ("the City"), the Department of Planning and Permitting ("DPP"),[2] and Dawn Takeuchi-Apuna in her official capacity as Director of the DPP[3] from enforcing or implementing Ordinance 22-7 insofar as it prohibits 30–89 home rentals, or the advertisement of the same, in any district on Oʻahu. *Id.* at 3.

Having reviewed the parties' briefs, statements of fact, and the record generally, the Court finds that HILSTRA is entitled to summary judgment. Specifically, as the City has not pointed to *any* intervening changes in the facts or law that would alter the bases for this Court's October 2022 grant of a preliminary injunction, the Court finds that Ordinance 22-7 is preempted by HRS § 46-4(a). Accordingly, as further explained below, the Court GRANTS HILSTRA's motion for summary judgment on Count I and permanently enjoins enforcement of Ordinance 22-7 insofar as it prohibits 30–89 day home rentals, or the advertisement of such rentals, in any district on Oʻahu. Further, as HILSTRA acknowledges that a favorable ruling on Count I will obviate the need for ruling on Counts II–X, those claims are DISMISSED. Defendants' Motions for Summary Judgment, Dkt. Nos. 62, 64, and 66, which relate to several of these dismissed claims, are therefore DENIED AS MOOT.

---

[2]The DPP is the agency charged with developing and enforcing zoning restrictions on Oʻahu. Complaint at ¶ 16.

[3]Dean Uchida was originally named as a defendant in this case in his official capacity as Director of the DPP. Pursuant to Federal Rule of Civil Procedure 25(d), following Uchida's resignation and Takeuchi-Apuna's appointment as his replacement in September 2022, the latter was substituted for the former as a defendant in this case. *See* Dkt. No. 31 at 1 n.1.

## FACTUAL & PROCEDURAL BACKGROUND[4]

The parties have stipulated to the facts as set forth herein.  Stip. Facts, Dkt. No. 59; *see United States v. Houston*, 547 F.2d 104, 107 (9th Cir. 1976) ("[w]hen parties have entered into stipulations as to material facts, those facts will be deemed to have been conclusively established.").

In 1957, the Hawaiʻi Legislature enacted the Zoning Enabling Act, HRS § 46-4(a), endowing the counties with the authority to promulgate zoning ordinances.  *Save Sunset Beach Coal. v. City & Cnty. of Honolulu*, 78 P.3d 1, 17 (Haw. 2003); *see* Stip. Facts at ¶ 41.  As relevant here, HRS § 46-4(a) permits counties to enact zoning ordinances as "necessary and proper to permit and encourage the orderly development of land resources within their jurisdictions," provided that:

> Neither this section nor any ordinance enacted pursuant to this section shall prohibit the continued lawful use of any building or premises for any trade, industrial, residential, agricultural, or other purpose for which the building or premises is used at the time this section or the ordinance takes effect; provided that a zoning ordinance may provide for elimination of nonconforming uses as the uses are discontinued, or for the amortization or phasing out of nonconforming uses or signs over a reasonable period of time in commercial, industrial, resort, and apartment zoned areas only.  In no event shall such amortization or phasing out of nonconforming uses apply to any existing building or premises used for residential (single-family or duplex) or agricultural uses.

---

[4]The factual and procedural background set forth herein is condensed as relevant to the instant Motions.  A more detailed version is set forth in this Court's Order Granting Plaintiff's Motion for a Preliminary Injunction.  *See* Dkt. No. 31 at 3–11.

HRS § 46-4(a); *Stip. Facts* at ¶ 42.

On January 2, 1969, pursuant to its authority under HRS § 46-4, the City enacted its first Comprehensive Zoning Code ("CZC"), dividing Oʻahu into several different zoning districts, including apartment, agricultural, business, industrial, preservation, residential, and resort. *Stip. Facts* at ¶ 47–48; Dkt. No. 24-4. In 1980, the Hawaiʻi state legislature adopted HRS § 514E, directing the counties to amend their zoning ordinances to limit the location of transient vacation rentals—defined as "rentals in a multi-unit building . . . with the duration of occupancy less than thirty days for the transient occupant." *Stip. Facts* at ¶ 52; HRS § 514E. In response, throughout the 1980s, the City enacted a series of land use ordinances ("LUOs")[5] restricting home rentals of fewer than thirty days to the Resort District and Resort-Hotel Precinct in Waikiki. *Stip. Facts* at ¶¶ 53–59. These LUOs provided, however, that property owners who were already renting their homes out for fewer than thirty days could continue to do so upon obtaining a nonconforming use certificate ("NUC").[6] *Id.* at ¶ 60. Accordingly—as the City has repeatedly acknowledged—it was legal in any Oʻahu zoning district to rent homes for thirty days or longer.[7] *See id.* ¶¶ 61–68.

---

[5]These LUOs replaced the CZC. *Stip. Facts* at ¶ 54.

[6]Approximately 800 NUCs currently exist on Oʻahu. *Stip. Facts* at ¶ 60.

[7]For example, in 2016, the City signed a settlement agreement in *Kokua Coal. v. Dep't of Planning & Permitting*, Civil No. 1:16-cv-00387-DKW-RLP ("*Kokua I*"), which provided, *inter alia*, "[a]s currently worded, the Land Use Ordinance prohibits providing all or a portion of a residential dwelling unit for less than thirty (30) consecutive calendar days for compensation.

On April 26, 2022, the City enacted Ordinance 22-7.  Stip. Facts at ¶ 84.

Taking effect on October 23, 2022, Ordinance 22-7 principally amended the City's

Land Use Ordinance to increase the minimum rental period for a non-Resort

property from 30 to 90 days—in effect, outlawing rentals of 89 days or less.  *Id.* at

¶¶ 86, 93, 95.  The Ordinance further barred advertisement of the same insofar as

such advertisements reflect daily or less than three-month rental rates.  *Id.* at ¶¶ 95,

97–102.  There are limited exceptions to the Ordinance, including, *inter alia*, for

rentals of less than 30 days operating pursuant to a 1980s-era NUC, and rentals in

Resort districts which have complied with a new annual registration process.  *Id.* at

¶ 93–94.

Finally, the Ordinance provided a 180-day phase out period for existing

lawful rentals of between 30 and 89 days.  Ord. 22-7 at 38, Dkt. No. 72-3.

Violations of the Ordinance may result in fines of up to $10,000 per day, in

addition to "the total sum received by the owner, operator, or proprietor of [the

illegal rental] from any impermissible rental activity during the period in which the

---

Thus, the LUO allows a property owner to rent its property to transient guests in blocks of thirty
(30) days or more, up to twelve times per year."  Stip. Facts at ¶ 63.  Similarly, in 2019, the City
signed a second settlement agreement following a suit over its enactment of Ordinance 19-18—
which regulated the advertisement of homes for rent for fewer than thirty days—clarifying that
such advertising restrictions do not apply to "legal long-term rental[s] (i.e. a rental of at least 30
consecutive days)."  *See Kokua Coal. v. Dep't of Planning & Permitting*, Civil No. 1:19-cv-
00414-DKW-RT ("*Kokua II*"); Stip. Facts at ¶¶ 67–68.

owner, operator, or proprietor was subject to daily fines." *Id.* at 9–10; Stip. Facts at ¶¶ 101, 112–13.

On June 6, 2022, HILSTRA filed a Complaint challenging various aspects of Ordinance 22-7 before it was to take effect. The Complaint alleges violations of: HRS § 46-4(a) (Count I); the state law doctrines of vested rights and/or zoning estoppel (Count II); substantive due process under the federal Constitution (Count III) and Hawaiʻi Constitution (Count IV); just compensation under the Takings Clauses of the federal Constitution (Count V) and Hawaiʻi Constitution (Count VI); the Contracts Clause of the federal Constitution (Count VII); the Excessive Fines Clauses of the federal Constitution (Count VIII) and Hawaiʻi Constitution (Count IX); and civil rights under 42 U.S.C. § 1983 (Count X). Through these claims, HILSTRA seeks to compel Defendants to: (1) "recognize the prior lawful use and advertisement of those owners and operators that were engaged in the previously legal advertisement and rental of property on Oahu for 30 days or more before the effective date of Ordinance 22-7"; (2) "allow those owners and operators to continue to advertise and rent for periods of 30 days or more . . . after the effective date of Ordinance 22-7"; (3) "provide a process for the determination and protection" of such uses; and (4) issue an "injunction against the enforcement of Ordinance 22-7 until such rights are recognized." Complaint at ¶ 8, Dkt. No. 1.

Consequently, on July 7, 2022, HILSTRA moved for a preliminary injunction, seeking to enjoin the enforcement of Ordinance 22-7 as conflict-preempted by HRS § 46-4(a) and constitutional takings principles.  Dkt. No. 13. On October 13, 2022, the Court granted the motion, finding that HILSTRA was likely to succeed on the merits of those claims, and issued a preliminary injunction against the enforcement or implementation of Ordinance 22-7 insofar as it prohibited 30–89 day home rentals, or the advertisement thereof, in any district on Oʻahu.  Dkt. No. 31.

The parties subsequently agreed that the claims could be resolved on cross-motions for summary judgment.  *See* Dkt. No. 43.  Accordingly, on July 31, 2023, HILSTRA filed a motion for summary judgment, *see* Dkt. No. 60, and the City, DPP, and Takeuchi-Apuna filed three cross-motions for partial summary judgment on Counts III–VI, *see* Dkt. Nos. 62, 64 & 66.  The parties filed their respective oppositions on November 9 & 10, 2023, *see* Dkt. Nos. 72, 74, 76, 77, and replies on November 17, 2023, *see* Dkt. Nos. 80–83.  Pursuant to Local Rule 7.1(c), the Court elected to decide these matters without a hearing.  *See* Dkt. No. 84.  This Order follows.

## STANDARD OF REVIEW

### A.      Summary Judgment

A party is entitled to summary judgment pursuant to Federal Rule of Civil

Procedure 56(a) "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."[8]  Where

the movant bears the burden of proof, "it must come forward with evidence which

would entitle it to a directed verdict if the evidence went uncontroverted."

*Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992).  In other words, the

movant "must establish beyond controversy every essential element" of its claim.

*S. California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003)

(quotation marks and citation omitted).  In assessing a motion for summary

judgment, all facts are construed in the light most favorable to the non-moving

party.  *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005).

Where the parties have filed cross-motions for summary judgment, the

standard does not change.  Rather, the Court "evaluate[s] each motion separately,

giving the nonmoving party in each instance the benefit of all reasonable

inferences."  *A.C.L.U. of Nevada v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th

Cir. 2006) (quotation marks and citation omitted).

---

[8]Where a motion for summary judgment follows the issuance of a preliminary injunction, the
Court's prior ruling "does not constitute the law of the case and the parties are free to litigate the
merits."  *City of Anaheim v. Duncan*, 658 F.2d 1326, 1328 n.2 (9th Cir. 1981).

**B.      Permanent Injunction**

"To be entitled to a permanent injunction, a plaintiff must demonstrate: (1) actual success on the merits; (2) that it has suffered an irreparable injury; (3) that remedies available at law are inadequate; (4) that the balance of hardships justify a remedy in equity; and (5) that the public interest would not be disserved by a permanent injunction." *Indep. Training & Apprenticeship Program v. California Dep't of Indus. Rels.*, 730 F.3d 1024, 1032 (9th Cir. 2013) (citing *eBay Inc. v. MercExch., LLC*, 547 U.S. 388, 391 (2006)).  When the government is the opposing party, the final two factors—balance of hardships and the public interest—merge.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## DISCUSSION

**I.      Count I: Violation of Hawaiʻi Revised Statutes § 46-4(a)**

HILSTRA seeks summary judgment on Count I, contending that Ordinance 22-7 is invalid as preempted by Hawaiʻi Revised Statutes § 46-4(a).  Dkt. No. 60 at 18.  Specifically, HILSTRA argues that HRS § 46-4(a) plainly restricts counties from passing zoning ordinances, such as Ordinance 22-7, which discontinue prior lawful residential uses, regardless of whether the county provides for the amortization or phasing out of the same.  *Id.* at 17.  HILSTRA provides that, should the Court rule in its favor on Count I, the balance of its claims—including its constitutional claims—can and should be dismissed.  *Id.* at 3.

- 9 -

In response, the City raises several new legal arguments.[9]  First, the City contends that the Court should decide all of the pending dispositive motions or abstain from addressing Count I based on the *Pullman* doctrine.[10]  Dkt. No. 72 at 3–6.  Should the Court address Count I, the City argues that Ordinance 22-7 should be upheld against HILSTRA's preemption challenge as it is a rental regulation—not a zoning ordinance—and therefore, not precluded by HRS § 46-4(a).  *Id.* at 6–15.  Finally, the City contends that even if the Court does find Ordinance 22-7 to be a zoning regulation, that the general nonconforming use protections of LUO § 21-4.110 apply to protect existing uses, such that it saves the Ordinance from preemption.  *Id.* at 15–22.

## A.    *Pullman* Abstention

*Pullman* abstention permits a district court to abstain from "the exercise of federal jurisdiction when 'a federal constitutional issue . . . might be mooted or presented in a different posture by a state court determination of pertinent state law.'"  *C-Y Dev. Co. v. City of Redlands*, 703 F.2d 375, 377 (9th Cir. 1983) (quoting *Cnty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189 (1959)).  It applies where three elements are present:

---

[9]The Court notes that each of the City's arguments in opposition to summary judgment is legal in nature and could have been raised at the time of the preliminary injunction.  Instead, the City raises each of these arguments now for the first time.

[10]It is, of course, curious that the City never asked the Court to abstain, based on *Pullman* or for any other reason, *before* the Court addressed Count I at the preliminary injunction stage, ruling in favor of HILSTRA.

> (1) the case touches on a sensitive area of social policy upon which the federal courts ought not enter unless no alternative to its adjudication is open, (2) constitutional adjudication plainly can be avoided if a definite ruling on the state issue would terminate the controversy, and (3) the proper resolution of the possible determinative issue of state law is uncertain.

*Courthouse News Serv. v. Planet*, 750 F.3d 776, 783–84 (9th Cir. 2014) (citation omitted).  "The court has no discretion to abstain in cases that do not meet the requirements."  *Courtney v. Goltz*, 736 F.3d 1152, 1163 (9th Cir. 2013) (quotation marks and citation omitted).  *Pullman* abstention "is limited to uncertain questions of state law because abstention from the exercise of federal jurisdiction is the exception, not the rule."  *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984) (quotation marks, brackets, and citation omitted).

Here, even assuming the City could satisfy the first and second requirements for *Pullman* abstention, the third requirement plainly cannot be.  First, as the Court has already held, the language of HRS § 46-4(a) and Ordinance 22-7 is plain and unambiguous.  *See* Dkt. No. 31 at 12–14 (discussing the clear reading of HRS § 46-4(a) and Ordinance 22-7).  There is nothing to suggest that HRS § 46-4(a) does not mean exactly what it says—that a county is barred from passing any law that would eliminate existing lawful residential uses.  *See id.* at 12–19; *accord Waikiki Marketplace Inv. Co. v. Chair of Zoning Bd. of Appeals of City & Cnty. of Honolulu*, 949 P.2d 183, 193 (Haw. Ct. App. 1997) (explaining that HRS § 46-4(a) bars changes to the zoning code which fully eliminate prior lawful uses); *Robert D.*

*Ferris Trust v. Planning Comm'n of County of Kaua'i*, 378 P.3d 1023, 1028–30

(Haw. Ct. App. 2016) (construing a new county zoning ordinance in accordance

with HRS § 46-4(a) to protect prior lawful operators of short-term rentals as

nonconforming uses).  Nor is there any ambiguity that Ordinance 22-7—which

does precisely that—directly conflicts with this provision.  *See* Dkt. No. 31 at 13–

21.  Second, regardless of the City's contention that "[b]ecause of the localized

and complex nature of land-use regulations, [the Ninth Circuit] generally requires

only a minimal showing of [*Pullman*] uncertainty in land-use cases," *Gearing v.*

*City of Half Moon Bay*, 54 F.4th 1144, 1151 (9th Cir. 2022) (citation omitted), that

minimal uncertainty, for the same reasons, simply does not exist here.

Undeterred, the City now attempts to argue that the proper resolution of this

state law claim is uncertain because Ordinance 22-7 may not constitute a zoning

ordinance at all, but rather a rent control ordinance which is not subject to HRS

§ 46-4(a)'s limits on eliminating prior lawful uses.  *See* Dkt. No. 72 at 4–13.

Specifically, the City asserts that the Court should abstain because "there is no

definitive ruling by the State courts on whether: (a) the ability to rent property for

30–90 days is a 'land use' that must be allowed to continue as a 'non-conforming

use' or (b) the City may impose a minimum rental duration on dwelling units

pursuant to its power to 'regulate the renting, subletting, and rental conditions of

property for places of abode' pursuant to HRS § 46-1.5(20) without violating HRS

§ 46-4(a)." Dkt. No. 72 at 6. The lack of a state court ruling on these precise matters is not determinative. Rather, a court should abstain under the third prong of *Pullman* where "a federal court cannot *predict* with any confidence how the state's highest court would decide an issue of state law." *Pearl Inv. Co. v. City & Cnty. of San Francisco*, 774 F.2d 1460, 1465 (9th Cir. 1985) (emphasis added).

Here, there is little indication that determining whether Ordinance 22-7 qualifies as a land use ordinance or rental regulation is an uncertain or unclear matter of state law. Rather, in making this determination, the Court is easily aided by ordinary tools of statutory interpretation and context. *See, e.g.*, *Reprod. Health Servs. v. Strange*, 204 F. Supp. 3d 1300, 1331–32 (M.D. Ala. 2016) (applying state rules of statutory construction to determine whether a statute is ambiguous for the purposes of *Pullman*); *see also infra* at 15–17. Accordingly, the Court lacks the discretion to exercise *Pullman* abstention in this case. *See Harman v. Forssenius*, 380 U.S. 528, 534 (1965) ("The doctrine…contemplates that deference to state court adjudication *only* be made where the issue of state law is uncertain." (emphasis added)).

## B.   Preemption

HILSTRA contends that Ordinance 22-7 is conflict-preempted by HRS § 46-4(a), which prohibits counties from enacting zoning ordinances which discontinue previously lawful residential property uses. Dkt. No. 60 at 15. Under Hawaiʻi law,

a municipal ordinance is preempted if: (1) "it covers the same subject matter embraced within a comprehensive state statutory scheme disclosing an express or implied intent to be exclusive and uniform throughout the state" ("field preemption") or (2) "it conflicts with state law" ("conflict preemption"). *Richardson v. City & Cnty. of Honolulu*, 868 P.2d 1193, 1209 (Haw. 1994).  This test is "disjunctive"—a county ordinance which conflicts with state law is invalid, regardless of whether or not it is field-preempted.[11]  *Ruggles v. Yagong*, 353 P.3d 953, 961 (Haw. 2015); *see also Richardson*, 868 P.2d at 1213 ("if an ordinance truly conflicts with Hawai'i statutory law that is of statewide concern, then it is necessarily invalid because it violates article VIII, section 6 of the Hawai'i Constitution and HRS §§ 50-15—the state's supremacy provisions.").  In considering whether a true conflict exists, the test is whether the ordinance "prohibits what the statute permits or permits what the statute prohibits." *Waikiki Resort Hotel, Inc. v. City & Cnty. of Honolulu*, 624 P.2d 1353, 1366 (Haw. 1981).

---

[11]In its Opposition, the City argues that "[a]n ordinance is only subject to conflict preemption if it 'truly conflicts with Hawaii statutory law that is of statewide concern.  Legislative intent is the controlling factor, and true conflicts only exist when county legislation tends to defeat the intent of a state statute." Dkt. No. 72 at 13–14 (quotation marks and citations omitted).  However, the City appears to conflate the standards for conflict preemption and field preemption.  Legislative intent is determinative only under a field preemption analysis and, therefore, is irrelevant here. *See Syngenta Seeds, Inc. v. Cnty. of Kauai*, 842 F.3d 669, 675 (9th Cir. 2016); *Pac. Int'l Servs. Corp. v. Hurip*, 873 P.2d 88, 94–95 (Haw. 1994); Dkt. No. 82 at 12 (explaining HILSTRA only argues conflict preemption).

As an initial matter, it is first necessary to determine the precise nature of the alleged conflict.  Relying on *Yee v. City of Escondido*, 503 U.S. 519 (1992), the City asserts that the Supreme Court has recognized a distinction between "land use (i.e., residential living activities)" and "the economic relationship between the landlord and tenant (i.e., the rental agreement)."  Dkt. No. 72 at 9–10.  The City argues that rental duration and advertising constitute the latter, such that Ordinance 22-7 is not a zoning ordinance at all, but rather a rental regulation authorized pursuant to HRS § 46-1.5(20).[12]  *Id.* at 6–13.  This is consequential as "restrictions on amortizing nonconforming uses created by HRS § 46-4(a) do not apply to rental regulations authorized by HRS § 46-1.5(20)."  *Id.* at 6.

The City's attempt to reframe the issue first presented during preliminary injunction proceedings more than a year ago is unavailing.  In *Yee*, the Supreme Court explained that the ordinance at issue "regulate[d] petitioners' *use* of their land *by regulating* the relationship between landlord and tenant."  *Yee*, 503 U.S. at 528 (emphasis added).  It did not create the land use versus landlord-tenant distinction that the City now imagines.

Further, HRS § 46-4(a) grants the counties wide latitude to enact zoning regulations, including, *inter alia*, through ordinances which specify "the areas in

---

[12]HRS § 46-1.5(20) authorizes counties to "regulate the renting, subletting, and rental conditions of property for places of abode by ordinance."

which particular uses may be subject to special restrictions" and the "designation of uses for which buildings and structures may not be used."  Pursuant to this authority, the City drafted and passed Ordinance 22-7 *as part of* the Land Use Ordinance of the City and County of Honolulu.  *See* Stip. Facts at ¶¶ 86–102; Ord. 22-7; ROH § 21-10.1.  Though the placement of the Ordinance is not, by itself, determinative, its location and characterization belie the City's current attempts to call it something it is not and never was—even according to the City.

Finally, beyond its locus within the Revised Ordinances of Honolulu, the language and substance of Ordinance 22-7 are also consistent with a zoning regulation.  For instance, Section 10 provides that short-term rentals are permitted within certain specified *zoning districts*.[13]  Such differentiation of particular property uses by zoning district is a classic example of a zoning regulation and explicitly authorized by HRS § 46-4(a).  Similarly, Ordinance 22-7's stated Findings and Purpose explain that "[s]hort-term rentals . . . are inconsistent with the *land uses* that are intended for our *residential zoned areas* . . . [t]he purpose of this Ordinance is to better protect the City's residential neighborhoods and housing stock from the negative impacts of short-term rentals."  Stip. Facts at ¶ 85; Ord.

---

[13]These districts include: "[t]he areas located within the Apartment Precinct of the *Waikiki Special District* mauka of Kuhio Avenue," "[t]he areas located within the *A-1 low-density apartment zoning district* and the *A-2 medium-density apartment zoning district* situated in close proximity to the Ko Olina Resort," and "[t]he area located within the *A-1 low-density apartment zoning district* situated in close proximity to the Turtle Bay Resort."  Dkt. No. 82 at 8 n.2; Ord. 22-7 at 17–18.

22-7 at 1.  Language such as this evinces an intent to legislate pursuant to the City's zoning authority, not its rental regulation authority.

Having found that Ordinance 22-7 is properly characterized as a zoning ordinance, the Court turns to whether it is conflict-preempted by HRS § 46-4(a). When considering preemption in the context of zoning, it is "fundamental that authority to zone is conferred by the legislature on the counties." *Save Sunset Beach Coal.*, 78 P.3d at 16 (citing *Kaiser Hawaii Kai Dev. Co. v. City & Cnty. of Honolulu*, 777 P.2d 244, 246 (Haw. 1989)).  Indeed, the "counties are authorized to zone *only* according to the dictates of HRS § 46-4." *Id.*  Accordingly, "any conflict between the State provisions and the county zoning ordinances is resolved in favor of the State statutes, by virtue of the supremacy provisions in article VIII, section 6 of the Hawai'i Constitution and HRS § 50-15." *Id.* at 17.

Here, as the Court's previous Order has already explained at length, there is no doubt that Ordinance 22-7 is conflict-preempted by HRS § 46-4(a). *See* Dkt. No. 31 at 11–21.  The language of both the Ordinance and the statute is clear.[14] HRS § 46-4(a) states:

> Neither this section nor any ordinance enacted pursuant to this section shall prohibit the continued lawful use of any building or premises for any . . . purpose for which the building or premises is used at the time this section or the ordinance takes effect.

---

[14]The Hawai'i Supreme Court has instructed "the fundamental starting point for statutory interpretation is the language of the statute itself." *Ho'omoana Found. v. Land Use Comm'n*, 526 P.3d 314, 320 (Haw. 2023) (citation omitted).

Stated plainly and unambiguously, this statute prohibits counties from passing zoning ordinances which discontinue any previously lawful uses.[15]  *See Iddings v. Mee-Lee*, 919 P.2d 263, 269 (Haw. 1996) ("[w]here the language of a statute is plain and unambiguous, [the Court's] only duty is to give effect to the statute's plain and obvious meaning.").  Further, there is only one exception:

> [A] zoning ordinance may provide for elimination of nonconforming uses as the uses are discontinued, or for the amortization or phasing out of nonconforming uses or signs over a reasonable period of time in commercial, industrial, resort, and apartment zoned areas only.  In no event shall such amortization or phasing out of nonconforming uses apply to any existing building or premises used for residential (single-family or duplex) or agricultural uses.

In other words, although HRS § 46-4(a) permits a county to phase out nonconforming uses "over a reasonable period of time," this exception is clearly limited to only four zoning districts: commercial, industrial, resort, and apartment. Conversely, the counties are explicitly prohibited from phasing out non-conforming uses in "any existing building or premises used for *residential* (single-family or duplex) . . . uses."  HRS § 46-4(a) (emphasis added).

---

[15]Indeed, Hawaiʻi courts have confirmed this facially obvious reading of HRS § 46-4(a).  *See, e.g.*, *Waikiki Marketplace*, 949 P.2d at 193 (explaining that to comply with HRS § 46-4(a), new LUOs must include provisions grandfathering in nonconforming uses); *Ferris Trust*, 378 P.3d at 1028 ("[t]he statutory protection of lawfully existing uses and structures prior to the effective date of a zoning restriction is grounded in constitutional law." (quotation marks and citation omitted)).

In this light, Ordinance 22-7 clearly violates HRS § 46-4(a) by eliminating previously lawful 30–89 day rentals without any grandfathering provision.  Before Ordinance 22-7, it was legal to rent homes on Oʻahu for periods of between 30 and 89 days in any zoning district.  After Ordinance 22-7, such activity is prohibited in *all* non-Resort districts, regardless of whether such use existed prior to the Ordinance's effective date.  This sweeping prohibition therefore directly conflicts with HRS § 46-4(a)'s bar against zoning provisions eliminating "lawful use[s] . . . at the time . . . [an] ordinance takes effect."  *See also Waikiki Marketplace*, 949 P.2d at 194 ("the grandfather protections afforded to a property owner under HRS § 46-4(a) and the LUO are intended to prohibit new zoning ordinances from interfering with an owner's lawful uses of a building or premises under an existing zoning ordinance.").

Further, HRS § 46-4(a)'s amortization exception cannot save Ordinance 22-7 from preemption.  That is because the exception applies *only* to "commercial, industrial, resort, and apartment zoned areas."  HRS § 46-4(a).  Insofar as Ordinance 22-7 seeks to eliminate or phase out existing lawful 30–89 day rentals in any other zone—including residentially zoned areas—it is invalid.  Moreover, even in commercial, industrial, resort, and apartment zones, HRS § 46-4(a)'s amortization exception applies *only* to non-residential uses.  *See* HRS § 46-4(a) ("In no event shall such amortization or phasing out of nonconforming uses apply

- 19 -

to any existing building or premises used for residential (single-family or duplex) . . . uses.").  As the Court has already explained at length, such "residential use" includes rentals of 30 days or longer.  *See* Dkt. No. 31 at 15–19 (explaining that short-term rentals are residential in nature as the tenants use the properties for ordinary living activities).  Therefore, HRS § 46-4(a)'s amortization exception is inapplicable in every zone which Ordinance 22-7 purports to regulate.

Finally, in what appears to be a last-ditch effort to save Ordinance 22-7 from preemption, the City argues that the Ordinance does not truly conflict with HRS § 46-4(a), as ROH § 21-4.110 permits preexisting 30–89 day rentals to continue as nonconforming uses[16] subject to reasonable restrictions.  Dkt. No. 72 at 16–22.  In other words, the City, again for the first time, argues that Ordinance 22-7 does not need a grandfathering provision because Honolulu, in effect, already has one. ROH § 21-4.110 provides:

> Constraints are placed on nonconformities to facilitate eventual conformity with this chapter. . . . Nonconforming . . . uses . . . may be continued, subject to the following provisions.
>
> . . .
>
> (c)(2) Any nonconforming use that is discontinued for any reason for 12 consecutive months, or for 18 months during any three-year period, may not be resumed; provided that a temporary cessation of the nonconforming use

---

[16]Under the LUO, a "nonconforming use" is "[a]ny use of a structure or a zoning lot that was previously lawful, but does not conform to the applicable use regulations of the district where the lot is located . . . as a result of any subsequent amendment to this chapter, or a zoning map amendment."  ROH § 21-10.1.

for purposes of ordinary repairs for a period not exceeding 120 days during any 12-month period will not be considered a discontinuation.

The City argues, *inter alia*, that "ROH § 21-4.110(c)(2) makes Ord. 22-7 consistent with HRS § 46-4(a) by applying the law of 'discontinuance' rather than 'amortization' or 'phase out' to 30–89 day rentals." Dkt. No. 72 at 21. Unlike amortization, discontinuance is not prohibited by HRS § 46-4(a). *Id.* at 20–21; *see League to Save Lake Tahoe v. Crystal Enters.*, 685 F.2d 1142, 1146 (9th Cir. 1982) (outlining the different ways in which a nonconforming use may terminate).

Notably, this argument is inconsistent with the City's ongoing representations, including *after* the Court issued the preliminary injunction, that Ordinance 22-7 applies to prohibit all rentals of fewer than 90 days, regardless of whether they were in operation prior to the Ordinance's effective date. *See* Dkt. No. 60 at 20–21; Dkt. No. 61-7 (supporting House Bill 109 which sought to amend HRS § 46-4(a) to permit counties to adopt zoning regulations eliminating or amortizing residential land uses); Dkt. No. 61-8 (supporting Senate Bill 219 re: the same). More importantly, however, it is facially implausible. Not only is Ordinance 22-7 silent on nonconforming uses, discontinuance, or the applicability of ROH § 21-4.110, it explicitly requires that all 30–89 day rental uses be *phased out* or *amortized* within 180 days of the Ordinance's effective date. *See* Ord. 22-7 at 38. Accordingly, ROH § 21-4.110 is largely irrelevant. As Ordinance 22-7 relies on amortization to eliminate *all* 30–89 day rentals, it violates HRS § 46-4(a).

- 21 -

In sum, nothing has materially changed since the Court granted HILSTRA's request for a preliminary injunction in October 2022. The City's new, creative, and ultimately implausible legal arguments do not stave off the inevitable: HILSTRA's motion for summary judgment is granted on Count I.

## II.    **Permanent Injunction**

### A.    **Grant of the Permanent Injunction**

Having granted summary judgment in favor of HILSTRA on the merits of its preemption claim, the Court considers the remaining factors relating to the potential issuance of a permanent injunction: (1) irreparable injury; (2) inadequate remedies at law; (3) balance of hardships; and (4) the public interest. *See eBay Inc.*, 547 U.S. at 391. For many of the same reasons explicated in the Court's prior Order issuing a preliminary injunction, HILSTRA satisfies all four remaining elements. *See* Dkt. No. 31 at 25–29.

First, HILSTRA has shown that absent a permanent injunction, its members are likely to sustain imminent and irreparable injury. Without the injunction, owners and advertisers of lawful 30–89 day rentals will be under credible threat of citation for violations of an ordinance that conflicts with state law. *See* Dkt. No. 60 at 11–13, 23; Stip. Facts at ¶ 105 (explaining "[s]ince the adoption of Ord. 22-7, DPP has established a short-term rental enforcement group"); *see also Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (finding a likelihood of

irreparable harm where the plaintiff faced threat of prosecution under a state law conflicting with federal law).  Further, HILSTRA additionally points to numerous intangible injuries flowing from Ordinance 22-7, including hindrances to: (1) service members' ability to easily transition to or from on-base military housing; (2) traveling medical practitioners' ability to provide contracted care at Oʻahu health care facilities; (3) local residents' ability to transition between homes; (4) contractors' abilities to perform work on Oʻahu; (5) displaced residents' ability to find housing following natural and man-made disasters, including the Red Hill fuel leak, fire, and flood; (6) neighbor island residents' ease of travel to Oʻahu for medical care or events; and (7) other individuals' ability to travel as they prefer. Dkt. No. 31 at 27 n.27; Dkt. No. 13-1 at 4–5; Complaint at ¶ 3.  Such intangible injuries are nearly impossible to remedy retrospectively and have been recognized by the Ninth Circuit to "qualify as irreparable harm."  *See Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).

Second, HILSTRA has also shown that there is no adequate remedy at law for these intangible harms.  "Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages."  *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014).  Accordingly, as HILSTRA has shown that it will sustain irreparable harm absent an injunction, it

has necessarily also shown that there is a lack of adequate remedies at law. *Arizona Dream Act Coal. v. Brewer*, 855 F.3d 957 (9th Cir. 2017).

Finally, because the government is a party, the Court's consideration of the balance of hardships and the public interest merge. *Nken*, 556 U.S. at 435. Here, the Court finds that after weighing the balance of hardships, an equitable remedy is warranted and would serve the public interest. The Ninth Circuit has explained, "it is clear that it would not be equitable or in the public's interest to allow the state . . . to violate the requirements of federal law, especially when there are no adequate remedies available." *Valle del Sol*, 732 F.3d at 1029. By that same reasoning, it would be neither equitable, nor in the public's interest, to permit the City to enforce an ordinance which violates the requirements of state law.[17] Conversely, there is no harm in compelling the City to comply with the statute that is the very source of its ability to legislate. The public interest and balance of equities favor granting a permanent injunction.

---

[17]The Court further notes that a permanent injunction merely prohibits the City from enforcing Ordinance 22-7 insofar as it fails to establish a process to protect nonconforming uses. The City is more than capable of establishing such protections. *See, e.g.*, Stip. Facts at ¶¶ 58, 60 (establishing, in Ordinance 89-154, a system of nonconforming use certificates for existing rentals of less than 30 days); Kaua'i County Code § 8-17.10(a) (creating a nonconforming use certificate program for existing short term vacation rentals following a 2008 zoning amendment); Hawai'i County Code § 25-4-16.1 (establishing the same following a 2019 zoning amendment).

### B. Scope of Injunctive Relief

Having met each of the requirements for a permanent injunction, the Court turns to the only remaining question—that of scope. "A district court has broad latitude in fashioning equitable relief when necessary to remedy an established wrong." *High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 641 (9th Cir. 2004) (quotation marks and citation omitted). Nevertheless, the Supreme Court has instructed that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Such "tailoring [is] particularly important where, as here, plaintiffs seek injunctive relief against a state or local government." *Melendres v. Maricopa Cnty.*, 897 F.3d 1217, 1221 (9th Cir. 2018).

Here, HILSTRA requests that the Court invalidate the entirety of Ordinance 22-7 as "its very core purpose [of prohibiting 30–89 day rentals] is frustrated upon striking its unlawful provisions." Dkt. No. 82 at 13–14; Dkt. No. 60 at 23. Such a remedy, however, is overbroad. For instance, HILSTRA acknowledges that the issue of whether "Ordinance 22-7 validly prohibits rentals of less than 90 days for properties that were not lawfully used prior to its enactment . . . is not before the Court, as Plaintiff's complaint was focused on the prior lawful uses." Dkt. No. 82 at 14 n.3. Moreover, Ordinance 22-7 contains an explicit severability clause, providing:

> Section 16.  Severability.  If any provision of this ordinance, or the application thereof to any person or circumstances, is held invalid, the invalidity does not affect other provisions or applications of the ordinance that may be given effect without the invalid provision or application, and to this end the provisions of this ordinance are severable.

Ord. 22-7 at 38.  This severability clause is indicative of the City Council's intent that Ordinance 22-7 remain effective as regarding those sections not preempted by HRS § 46-4(a).  *See Nat'l Advert. Co. v. City of Orange*, 861 F.2d 246, 250 (9th Cir. 1988) ("whether partial invalidation is appropriate depends on the intent of the City in passing the ordinance and whether the balance of the ordinance can function independently"); *accord State v. Pacquing*, 389 P.3d 897, 913 (Haw. 2016) ("if, when the [invalid] portion is stricken out, that which remains is complete in itself and capable of being executed in accordance with the apparent legislative intent, it must be sustained." (citation omitted)).  Accordingly, the Court declines to invalidate Ordinance 22-7 in its entirety, and instead enjoins its enforcement only insofar as it prohibits the rental or advertisement of 30–89 day rentals lawfully existing as of the Ordinance's effective date.

## III.   Counts II–X: State Law, Federal Law, and Constitutional Claims

In addition to Count I, HILSTRA asserts that Ordinance 22-7 violates the state law doctrines of vested rights and/or zoning estoppel (Count II); substantive due process under the United States Constitution (Count III) and Hawaiʻi Constitution (Count IV); the Takings Clauses of the United States Constitution

(Count V) and Hawai'i Constitution (Count VI); the Contracts Clause of the United States Constitution (Count VII); the Excessive Fines Clauses of the United States Constitution (Count VIII) and Hawai'i Constitution (Count IX); and civil rights under 42 U.S.C. § 1983 (Count X).  Dkt. No. 1.  Because HILSTRA agrees that a summary judgment ruling in its favor on Count I means that the balance of its claims is not necessary and should be dismissed, *see* Dkt. No. 60 at 3, the Court dismisses Counts II through X.  That, in turn, means there is no need to adjudicate the City's motions for partial summary judgment on Counts III through VI, *see* Dkt. Nos. 62, 64, 66, and those motions are DENIED AS MOOT.

## CONCLUSION

For the reasons set forth herein, HILSTRA's motion for summary judgment, Dkt. No. 60, is GRANTED IN PART and DENIED IN PART.  Specifically, the motion for summary judgment is GRANTED with respect to Count I, but the scope of the resulting permanent injunction is limited to the following extent:  The City and County of Honolulu; the Department of Planning and Permitting; Dawn Takeuchi-Apuna in her official capacity as Director of the Department of Planning and Permitting; and all their respective officers, agents, servants, employees, and attorneys, and persons in active concert or participation with them, are hereby enjoined from enforcing or implementing Ordinance 22-7, which went into effect October 23, 2022, insofar as it prohibits 30–89 day home rentals lawfully in

existence at its effective date, or the advertisement of such rentals, in any district on O'ahu.

Counts II–X, as explained above, are DISMISSED at HILSTRA's request. Accordingly, Defendants' three motions for partial summary judgment, Dkt. Nos. 62, 64 & 66, are DENIED AS MOOT.

The Clerk is instructed to enter Judgment in favor of Plaintiff Hawaii Legal Short-Term Rental Alliance and CLOSE this case.

IT IS SO ORDERED.

DATED: December 21, 2023 at Honolulu, Hawai'i.

Derrick K. Watson
Chief United States District Judge

---

Hawaii Legal Short-Term Rental Alliance v. City and County of Honolulu, et al; Civil No. 22-00247-DKW-RT; **ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND (2) DENYING AS MOOT DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

- 28 -